**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FERNANDO DONIS
Parque España 49-2
Col. Condesa
06140 Del. Cuauhtemoc, Mexico, D.F.
Mexico

                          Plaintiff,

    v.

THE DUBAI MUNICIPALITY
United Arab Emirates Ministry of
  Foreign Affairs & International Cooperation
Al Bateen
King Abdullah Bin Abulaziz Al Saud Street
Abu Dhabi
United Arab Emirates

 and

THYSSENKRUPP AG
thyssenkrupp Allee 1
45143 Essen
Germany,

                         Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No. 16-2501

Plaintiff Fernando Donis, by his attorneys Klaris Law PLLC, Emery Celli Brinckerhoff & Abady LLP, and Ifrah Law, alleges as follows:

**PRELIMINARY STATEMENT**

1.    This case is about internationally renowned architect Fernando Donis, whose award-winning design for a landmark skyscraper, the Dubai Frame, was appropriated and built without his consent by the Dubai Municipality and ThyssenKrupp AG.

2.    Here are images of Donis's award-winning design (left) and the stolen copy (right):

1



3.      In 2008, Mr. Donis submitted his design for the Dubai Frame to an international

design competition (the "Competition") sponsored by defendant ThyssenKrupp AG

("ThyssenKrupp"), an elevator manufacturing company, for the benefit of the defendant Dubai

Municipality and the promotion of ThyssenKrupp.  The Competition sought architectural designs

for an emblematic structure for Za'abeel Park in the center of Dubai to "promote the new face of

Dubai."  *See* Ex. 1 (Competition Conditions) § A.  The Competition prize was $100,000 and the

chance to have the design built by the Dubai Municipality, with the winner's consent and

involvement in drafting the corresponding design.  *Id.* § C.2.

4.      Mr. Donis won the Competition, defeating 925 other entries from renowned

architects the world over.  Thrilled with Mr. Donis's design for the Dubai Frame, the Dubai

Municipality decided it wanted to build it.

5.      For the next several years—from the time Mr. Donis won the competition in 2009

until the Dubai Municipality broke ground on the Dubai Frame in 2014 —the Dubai

Municipality strung Mr. Donis along and led him to believe that he would further develop the

project and retain the rights in his work.  Mr. Donis *never granted the Dubai Municipality*

*permission to use his design* and *never signed an agreement with the Dubai Municipality*, even

though the Competition rules required both before the Dubai Municipality could use the design.

At the same time, the Dubai Municipality repeatedly acknowledged that Mr. Donis held the

copyright in the Dubai Frame, and behaved as though it intended to secure his permission prior

to construction.

6.      Then, on the eve of the groundbreaking, the Dubai Municipality stonewalled Mr.

Donis.  It cut off communication with Mr. Donis, refusing to answer his emails, involve him in

construction, or, most critically, obtain his permission prior to constructing his award-winning

design.  Instead, the Dubai Municipality simply went ahead and built his design without him,

using architectural plans copied directly from the technical drawings that Mr. Donis submitted to

the Competition.  ThyssenKrupp took part—providing elevators for the towers, participating in

the project's construction and promotion, and profiting handsomely from the entire venture—all

the while knowing it had infringed Mr. Donis's rights.

7.      The habitable landmark structure that stands in Za'abeel Park today (the

"Infringing Structure") is a direct infringement of Mr. Donis's copyrighted architectural work.  It

is a replica of his unique and prize-winning Dubai Frame.  The Infringing Structure did not just

copy the *idea* of building a frame in Dubai.  It copied the specific expressive elements embodied

in Mr. Donis's design, including the proportions, height, building materials, directional

orientation, and allocation of spaces within the structure.

8.      Any day now, the Infringing Structure will open to the public—to the tune of 2

million tourists and millions more in revenue per year.   The Dubai Municipality and

ThyssenKrupp will obtain an economic windfall to top off the substantial economic benefits they

have already incurred from misappropriating Mr. Donis's award-winning design.

9.      Mr. Donis brings this action to vindicate intellectual property rights that the Dubai Municipality and ThyssenKrupp willfully violated.  The Dubai Municipality copied his design for the Dubai Frame and built it without his permission using architectural plans based directly off of his technical drawings.   It has already profited handsomely from its misappropriation and will continue to do so as the building opens to the public.  ThyssenKrupp contributed to the copying and assisted the Dubai Municipality every step of the way—from sponsoring the competition to building the infringing structure.  Both Defendants have incurred economic benefits from their illegal acts.  Both are liable to Mr. Donis for their conduct.

## PARTIES

10.      Plaintiff Fernando Donis is an acclaimed architect and the founder of DONIS, an international architecture firm.  Mr. Donis has offices in Mexico City, Mexico and Rotterdam, the Netherlands, but he works on projects across the globe.  Mr. Donis has carried out work in the United States for the renowned architect Rem Koolhas, with whom he closely collaborated as an associate for eight years.

11.      The Dubai Municipality is a foreign state or political subdivision under 28 U.S.C. § 1602, *et seq.*

12.      ThyssenKrupp AG is a German corporation with its principal place of business located at thyssenkrupp Allee 1, 45143 Essen, Germany.  ThyssenKrupp AG has a Washington, D.C. branch located at 1615 L Street, Suite 560, Washington, D.C. 20036, from which it conducts daily business and provides sales and services relating to passenger and freight elevators, escalators, and moving sidewalks.  During the period set forth in this Complaint, ThyssenKrupp AG was engaged in the business of selling elevators and providing elevator maintenance and repair services to customers in the United States, including Washington, D.C.

through its local office, and across the globe.

## JURISDICTION AND VENUE

13.     This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*;

the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*; the Declaratory Judgement Act,

28 U.S.C. §§ 2201 and 2202, and the common law of the District of Columbia.

14.     This Court has subject matter jurisdiction over the federal claims pursuant to 28

U.S.C. §§ 1330, 1331, 1332, 1338(a), 1605(a)(2), 1605(a)(3), 2201, and 2202.  This Court has

supplemental subject matter jurisdiction over the common law claims pursuant to 28 U.S.C. §

1367.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(f) because Defendant the

Dubai Municipality is a foreign state or political subdivision.

## JURY DEMAND

15.     Plaintiff demands trial by jury in this action.

## FACTS

16.     Plaintiff Fernando Donis is an internationally acclaimed architect and the founder

of DONIS architecture firm.  Mr. Donis has designed the CCTV Headquarters in Beijing in

2002, while at Rem Koolhaus's firm, the projects for the new Jeddah International Airport in

Saudi Arabia, and the Porsche Design towers in Dubai, among many other landmark buildings.

He is a regular entrant—and frequent first-prize winner—in international design competitions,

including the competition for the National Palace of Justice in Paris and the competition for the

design of an Olympic emblem for the 2012 London Olympics.

### *The Competition*

17.     In 2008, Mr. Donis entered the competition for the XI ThyssenKrupp Elevator

Architecture Award.  The objective of the Competition was to develop an iconic, tall, and

emblematic structure in Za'abeel Park in the Dubai Municipality for the commercial purpose of promoting tourism and other recreational, scientific, and cultural activities.  The design was required to include a café and conference space for up to 100 persons.  Ex. 1 § B.

18.     The Competition conditions were jointly developed by ThyssenKrupp and the Dubai Municipality.  *Id.* § C.1.  The Competition was held pursuant to UNESCO guidelines for international architecture competitions, and it was approved by the International Union of Architects (UIA).

19.     The Competition was open worldwide to any architect, or team of architects, authorized to practice in their respective countries and/or registered in any association or society of architects.  Registration for the Competition took place on-line, via a website set up for the Competition: www.thyssenkrupp-elevator-architecture.com.  *Id.* § C.4, C.5.

20.     The Competition was advertised through the Internet in the United States.

21.     The Competition conditions explicitly stated that entrants would maintain all copyrights in their works.  They stated that the "author of the preliminary design placed first will keep his copyright and his work may only be used by the Dubai Municipality when he has signed the corresponding contract for drafting the corresponding design with the former."  *Id.* § C.15.  They further stated that no preliminary design "whether Prize-winning or not, may be partially or totally used without the author's formal consent."  *Id.*

22.     The Competition received 926 entries from across the globe.  Mr. Donis submitted the Dubai Frame as an original copyrighted work, and he called the design the "Dubai Frame," a name that he personally coined.  On May 6, 2009, a panel of international judges selected Mr. Donis's "Dubai Frame" proposal as the first-prize winner of the XI ThyssenKrupp Elevator Architecture Award.  Two days later, ThyssenKrupp phoned Mr. Donis to inform him

of his prize.

23.     Mr. Donis travelled to Dubai to attend the Competition's award ceremony on May

25, 2009.  Prior to the ceremony, Mr. Donis continued to fine-tune his project, including by

retaining a renowned engineering firm, Werner Sobek, as a consultant.  He hired an industrial

designer based in the Netherlands to make a model replicating the form and structural qualities

of the Dubai Frame, and he presented the model at the ceremony and delivered it to the Dubai

Municipality.

24.     The ceremony was attended by high-ranking ThyssenKrupp and Dubai

Municipality officials, as well as the Dubai Municipality's Crown Prince.  Mr. Donis personally

presented his project to the Crown Prince.  The event was widely covered by the media and

publicized on ThyssenKrupp's website.  Below is a photo depicting Mr. Donis's model replica,

which was featured at the awards ceremony:



**The Dubai Municipality Initiates Plans to Build the Dubai Frame**

25.     Within weeks after the award was announced, the Dubai Municipality began

investigating the feasibility of building the Dubai Frame.  In June 2009, Roxy Binno, an official

in the Dubai Municipality's Urban Design & Planning Department, contacted Mr. Donis to

obtain a cost estimate for developing the design of the Dubai Frame, and Mr. Donis provided a

project proposal.

26.     In January 2010, the Dubai Municipality informed Mr. Donis that the DONIS

firm could not serve as the sole developer of the project because local laws required the

involvement of a firm with a license and registered office in Dubai.  The Dubai Municipality told

Mr. Donis that it was seeking a local firm to collaborate on the development.  Several months

later, in May 2010, it told Mr. Donis that the project was temporarily on hold due to a global

economic downturn.

27.     On December 19, 2010, Mr. Donis received an email from The National

newspaper in Abu Dhabi, which was reporting that the Dubai Municipality planned to proceed

with the Dubai Frame.  Surprised, Mr. Donis contacted the Dubai Municipality the same day to

inquire about the status of the project and his role.  The Dubai Municipality responded that it was

still seeking to engage local consultants in addition to DONIS.

28.     On February 8, 2011, the Dubai Municipality contacted Mr. Donis regarding next

steps for the execution of the project and invited him to prepare an amended preliminary

architectural design.  On April 3, 2011, the parties tentatively agreed that Mr. Donis would

prepare a new preliminary architectural design for the Dubai Frame in coordination with a local

team in Dubai, and the Dubai Municipality offered to prepare a Consultancy Services Agreement

(CSA) reflecting that agreement.

29.     On April 23, 2011, the Dubai Municipality sent Mr. Donis a draft CSA, but the

terms did not reflect the parties' prior discussions.  On April 26, 2011, Mr. Donis sent back

comments to the draft CSA, including comments regarding Mr. Donis's role in executing the

project, his remuneration, and his involvement during the several stages of the development.

The comments further sought to clarify that Mr. Donis would maintain his copyright in the

design.

30.     On May 25, 2011, the Dubai Municipality sent Mr. Donis a new draft CSA, which

still contained terms unfavorable to Mr. Donis.  On May 27, 2011, Mr. Donis replied with

additional comments, reiterating his sole ownership of copyright in his design.  The Dubai

Municipality refused to include Mr. Donis's comments.

31.     Also in late May or early June 2011, Mr. Donis communicated with Mr. Javier

Del Pozo, CEO of ThyssenKrupp, regarding the status of the negotiations.  ThyssenKrupp

suggested that Mr. Donis meet with Dubai Municipality representatives in person.

32.     In July 2012, the Dubai Municipality publicly announced its implementation of

the Dubai Frame project.  Immediately, on July 23, 2013, Mr. Donis again contacted the Dubai

Municipality to reach agreement regarding collaboration.  In August 2012, the Dubai

Municipality responded, and the parties began renegotiating Mr. Donis's involvement.  As part

of those negotiations, Mr. Donis and his business partner travelled to Dubai in September 2012

to discuss CSA terms with the Dubai Direction of Legal Affairs.

33.     During the meeting, Mr. Donis and his partner were asked to correct the CSA

draft and highlight the crucial issues in order to achieve the collaboration. They did, expressing

again Mr. Donis's interest in participating in all project stages and keeping the copyright. The

Director of Legal Affairs agreed to discuss these relevant points with the Director General of the

Dubai Municipality and offered to continue the conversation. Mr. Donis offered to extend his

stay in Dubai an additional day to discuss the matter further and the Director of Legal Affairs

agreed.

34.     Yet after the meeting, Mr. Donis received an email from the Director of Legal Affairs rejecting the ideas discussed during the meeting and reverting back to the position that Mr. Donis's role needed to be limited to that described in the last draft CSA.  Thereafter, Mr. Donis offered to revise the draft CSA himself, again aiming to find a positive outcome of the negotiations.

35.     After months waiting for an answer, on January 21, 2013, the Dubai Municipality sent Mr. Donis a completely new draft CSA, which still did not include the provisions that the parties discussed while Mr. Donis was in Dubai.   This new draft contained new terms that were even more unfavorable to Mr. Donis.  It limited his role to an advisor, required him to give away his intellectual property in the project, and forbid him from ever promoting his practice through the project. Mr. Donis never signed the proposed CSA.

***The Dubai Municipality and ThyssenKrupp Infringe Mr. Donis's Rights***

36.     In December 2013, Mr. Donis learned through news reports that the Dubai Municipality was planning to commence construction of a building that infringed his copyrighted design for the Dubai Frame—even though he never signed any CSA or granted the Dubai Municipality a license to use his design.   Immediately, on December 9, 2013, Mr. Donis contacted the Dubai Municipality to again state his interest in being involved in the project, but the Dubai Municipality never responded.

37.     Mr. Donis wrote to the Dubai Municipality again in January 2014, stating that if the project began construction without his permission, it would infringe on his intellectual property rights.   Again, the Dubai Municipality never responded.

38.     In or around February 2014, the Dubai Municipality broke ground in Za'abeel Park, and began constructing a structure that is nearly identical to Mr. Donis's Dubai Frame.

39.     Mr. Donis's Dubai Frame is a copyrightable architectural work and Mr. Donis is the author.

40.     The Infringing Structure copies the unique and expressive elements of Mr. Donis's design, and the building will be known by the very name Mr. Donis coined, the "Dubai Frame."

41.     Like the Dubai Frame, the Infringing Structure is a large frame consisting of two towers connected by a bridge observatory at the top of the towers.  Also like the Dubai Frame, the Infringing Structure is located in Za'abeel Park and symbolically oriented to face both "Old Dubai" and "New Dubai," providing views of both from the bridge observatory.

42.     The dimensions and proportions of the Infringing Structure are substantially the same as the dimensions and proportions of the Dubai Frame.  The height of the Infringing Structure—150 meters—is exactly the same as the height of the Dubai Frame.  The Infringing Structure also implements the same concrete building materials and steel structural bridge used in the Dubai Frame.  The locations of elevators, stairs, and mechanical structures are all the same.

43.     Moreover, the Infringing Structure and Dubai Frame both feature program and cultural facilities on the bottom level, and a restaurant and sightseeing facilities on the top level. Even the construction strategy used to build the Dubai Frame was the same strategy explained by Mr. Donis in his award-winning entry.

44.      Here is a side-by-side comparison of Mr. Donis's Dubai Frame (below left) with the Infringing Structure (below right):



45.     In addition, the architectural plans used by the Dubai Municipality and ThyssenKrupp to build the Dubai Frame directly infringe the technical drawings that Mr. Donis submitted to the Competition in connection with his design.

46.     The technical drawings that Mr. Donis submitted constitute a copyrightable work and Mr. Donis is the author.

47.     The technical drawings that Mr. Donis submitted to the Competition included: the overall form and concept of a design monument that frames Dubai; the height of 150 meters; the allocation of cultural programs to the bottom of the building; the allocation of eating spaces and sight-seeing facilities on the top of the building; the orientation of the building to frame Dubai; the construction of towers using reinforced concrete; the construction of a bridge with triangular steel trusses; a construction process using slip-forming concrete; the lifting of the top bridge along the finished towers; the allocation of elevators, stairs, and mechanical services in each tower; and the experience of moving around the frame, from access to exit.

48.     The architectural plans that the Dubai Municipality and ThyssenKrupp used to build the Infringing Structure feature all of those same elements.

49.     On information and belief, the architectural plans that the Dubai Municipality and ThyssenKrupp used to build the Dubai Frame were copied from the technical drawings that Mr. Donis submitted to these very parties in the Competition.

***The Dubai Municipality and ThyssenKrupp Profit from Their Misappropriation***

50.     In soliciting designs for the Competition and constructing the Infringing Structure, the Dubai Municipality engaged in commercial acts.  In the Competition phase, it participated in actively soliciting designs from architects across the world to build as a commercial structure.  In the construction phase, it selected and hired a local architecture firm to implement Mr. Donis's design, selected and hired contractors and construction workers, and negotiated and carried out commercial contracts.

51.     Building the Infringing Structure was not a government function or public act of the Dubai Municipality—rather, it was a commercial act designed "to promote the new face of Dubai" through commercial tourism and earn revenue.  Ex. 1 § A.

52.     ThyssenKrupp, which knew that the Infringing Structure infringed Mr. Donis's design, provided elevators for the two towers.  ThyssenKrupp worked with the Dubai Municipality to construct the elevator towers, and it was paid by the Dubai Municipality for its services and products.  It has collaborated with the Dubai Municipality in promoting and advertising the Infringing Structure.

53.     The Infringing Structure is scheduled to open to the public shortly.  The Dubai Municipality has stated that it expects over two million tourists will visit the site annually, which will bring substantial revenue to the Dubai Municipality.

54.     In addition, the Dubai Municipality and ThyssenKrupp are, on information and belief, on the brink of commencing an international campaign to advertise the Infringing

Structure to tourists.

55.     As a result of their wrongful appropriation of Mr. Donis's copyrighted design and technical drawings, the Dubai Municipality and ThyssenKrupp have been unjustly enriched to the detriment of Mr. Donis.

56.     It would be futile for Mr. Donis to bring suit in Dubai given the constraints of the legal system, particularly with respect to the ability of individuals to sue the government (which requires prior consent by the government), as well as the lack of protection and respect for the rights of non-nationals.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement for Architectural Work (Against the Dubai Municipality)**

57.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

58.     Plaintiff is the owner of a valid copyright in the Dubai Frame.

59.     The design for the Dubai Frame was submitted for registration at the U.S. Copyright Office.

60.     At the initial level of review, the Office declined to register the design, stating that the Dubai Frame is not a "habitable building."  This finding ignores the fact that the Dubai Frame is expected to host millions of tourists annually at its observatory, restaurant, shops and other interior locations.  Accordingly, the initial declination has been appealed within the Office, pursuant to the rules, and this Court has jurisdiction over this claim.

61.     The Dubai Frame is an architectural work under 17 U.S.C. 102(8).  Mr. Donis is the author of the Dubai Frame.

62.     Defendant the Dubai Municipality had access to Plaintiff's design for the Dubai Frame because Plaintiff submitted it to an international competition sponsored by Defendants

ThyssenKrupp and the Dubai Municipality.

63.     Defendant the Dubai Municipality infringed Plaintiff's copyright in the Dubai Frame by copying the Dubai Frame in designing and building the Infringing Structure.  The Infringing Structure is substantially similar to Plaintiff's copyrighted Dubai Frame.

64.     The Dubai Municipality infringed Plaintiff's copyright without permission or claim of right.

65.     The Dubai Municipality infringed Plaintiff's copyright knowingly, willfully, intentionally, and with reckless disregard of Plaintiff's intellectual property rights.

66.     As a result of the Dubai Municipality's unlawful and willful infringement of Plaintiff's valid copyright, Plaintiff is entitled to statutory damages or actual damages and profits of the Dubai Municipality, as provided in 17 U.S.C. § 504.  Plaintiff is also entitled to costs and attorneys' fees, as provided in 17 U.S.C. § 505, and a declaratory judgment that plaintiff is the copyright holder in the Dubai Frame.

## SECOND CLAIM FOR RELIEF
**Copyright Infringement for Technical Drawings (Against the Dubai Municipality)**

67.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein

68.     Plaintiff is the owner of a valid copyright in technical drawings for the Dubai Frame (the "technical drawings").

69.     Plaintiff has applied for and received registration of his copyright in the technical drawings under the Copyright Laws of the United States.

70.     The certificate registration number for Plaintiff's copyright is VA0002022506 / 2016-11-21.

71.     The technical drawings constitute a pictorial, graphic, or sculptural work under 17

U.S.C. § 102(5). Mr. Donis is the author of the technical drawings.

72. Defendant the Dubai Municipality had access to Plaintiff's technical drawings for the Dubai Frame because Plaintiff submitted them to an international competition sponsored by Defendants ThyssenKrupp and the Dubai Municipality.

73. Defendant the Dubai Municipality infringed Plaintiff's copyright in the technical drawings by copying the technical drawings to create architectural plans for the Infringing Structure. The Dubai Municipality's architectural plans for the Infringing Structure are substantially similar to Plaintiff's technical drawings.

74. The Dubai Municipality infringed Plaintiff's copyright without permission or claim of right.

75. The Dubai Municipality infringed Plaintiff's copyright knowingly, willfully, intentionally, and with reckless disregard of Plaintiff's intellectual property rights.

76. As a result of the Dubai Municipality's unlawful and willful infringement of Plaintiff's valid copyright, Plaintiff is entitled to statutory damages or actual damages and profits of the Dubai Municipality, as provided in 17 U.S.C. § 504. Plaintiff is also entitled to costs and attorneys' fees, as provided in 17 U.S.C. § 505, and a declaratory judgment that plaintiff is the copyright holder in the Dubai Frame.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment (Against the Dubai Municipality)

77. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

78. Without the consent or permission of Plaintiff, the Dubai Municipality used Plaintiff's design for the Dubai Frame to build the Infringing Structure and copied Plaintiff's technical drawings to create its architectural plans for the Infringing Structure.

79.     The Dubai Municipality has obtained economic benefits as a result of using

Plaintiff's design.  Because it used Plaintiff's Dubai Frame design, the Dubai Municipality did

not have to incur costs to have an architecture firm design an innovative landmark structure for

Za'abeel Park.  It further benefited economically by copying Plaintiff's technical drawings to

create the architectural plans to build the Infringing Structure.  The Dubai Municipality also

obtained or imminently will obtain economic benefits from revenues associated with tourism to

the Infringing Structure.

80.     Given that the Dubai Municipality built the Infringing Structure using Plaintiff's

Dubai Frame design and technical drawings without Plaintiff's permission, and without paying

for the right to use it (either by licensing or purchasing the design), it would be unjust for the

Dubai Municipality to retain the benefit it incurred from its unlawful conduct.

<strong><u>FOURTH CLAIM FOR RELIEF</u></strong><br><strong>Contributory Copyright Infringement for Architectural Work (Against ThyssenKrup)</strong>

81.     Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were

fully set forth at length herein.

82.     Plaintiff is the owner of a valid copyright in the Dubai Frame.

83.     The design for the Dubai Frame was submitted for registration at the U.S.

Copyright Office.

84.     At the initial level of review, the Office declined to register the design, stating that

the Dubai Frame is not a "habitable building."  This finding ignores the fact that the Dubai

Frame is expected to host millions of tourists annually at its observatory, restaurant, shops and

other interior locations.  Accordingly, the initial declination is being appealed within the Office,

pursuant to the rules and this Court has jurisdiction over this claim.

85.     The Dubai Frame is an architectural work under 17 U.S.C. 102(8).  Mr. Donis is

the author of the Dubai Frame.

86.     The Dubai Municipality directly infringed Mr. Donis's copyrighted architectural work by building his copyrighted design without his permission.

87.     ThyssenKrupp had knowledge of the Dubai Municipality's infringing activity and participated substantially in the infringement.

88.     ThyssenKrupp participated substantially in the infringement by sponsoring the design Competition and contracting to provide elevators for use in the Infringing Structure even after it knew that the Dubai Municipality did not have Mr. Donis's consent to use his copyrighted design in the Dubai Frame.

89.     Throughout the time period relevant to this Complaint, ThyssenKrupp acted in concert with the Dubai Municipality and benefitted financially from the direct infringement by the Dubai Municipality.

90.     As a result of ThyssenKrupp's unlawful and willful contributory infringement of Plaintiff's valid copyright, Plaintiff is entitled to statutory damages or actual damages and profits of ThyssenKrupp, as provided in 17 U.S.C. § 504.  Plaintiff is also entitled to costs and attorneys' fees, as provided in 17 U.S.C. § 505, and a declaratory judgment that plaintiff is the copyright holder in the Dubai Frame.

## FIFTH CLAIM FOR RELIEF
### Contributory Copyright Infringement for Technical Drawings (Against ThyssenKrupp)

91.     Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

92.     Plaintiff is the owner of a valid copyright in technical drawings for the Dubai Frame.

93.     Plaintiff has applied for and received registration of his copyright in technical

drawings for the Dubai Frame under the Copyright Laws of the United States.

94.     The certificate registration number for Plaintiff's copyright is VA0002022506 / 2016-11-21.

95.     The technical drawings constitute a pictorial, graphic, or sculptural work under 17 U.S.C. § 102(5).  Mr. Donis is the author of the technical drawings

96.     The Dubai Municipality directly infringed Mr. Donis's copyrighted technical drawings by copying them to create architectural plans for the Infringing Structure without Mr. Donis's permission.

97.     ThyssenKrupp had knowledge of the Dubai Municipality's infringing activity and participated substantially in the infringement.

98.     ThyssenKrupp participated substantially in the infringement by consulting and working with the Dubai Municipality to create the architectural plans that infringed Mr. Donis's technical drawings, including plans for the elevator towers of the Infringing Structure that infringed Mr. Donis's technical drawings.

99.     Throughout the time period relevant to this Complaint, ThyssenKrupp acted in concert with the Dubai Municipality and benefitted financially from the direct infringement by the Dubai Municipality.

100.    As a result of ThyssenKrupp's unlawful and willful contributory infringement of Plaintiff's valid copyright, Plaintiff is entitled to statutory damages or actual damages and profits of ThyssenKrupp, as provided in 17 U.S.C. § 504.  Plaintiff is also entitled to costs and attorneys' fees, as provided in 17 U.S.C. § 505, and a declaratory judgment that plaintiff is the copyright holder in the Dubai Frame.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment (Against ThyssenKrupp)

101.     Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

102.     Without the consent or permission of Plaintiff, ThyssenKrupp contributed to building the Infringing Structure using Mr. Donis's design for the Dubai Frame.  ThyssenKrupp has incurred economic benefits as a result of using Plaintiff's design, including proceeds from contracts with the Dubai Municipality to install elevators in the Infringing Structure. ThyssenKrupp has also incurred economic benefits as a result of its publicity of the Infringing Structure and ThyssenKrupp's involvement in its construction.

103.     Given that the Infringing Structure was built based on Plaintiff's Dubai Frame and without Plaintiff's permission, it would be unjust for ThyssenKrupp to retain the benefits it has incurred from the Infringing Structure.

WHEREFORE, Plaintiff respectfully request judgment against Defendants as follows:

(A)     A declaration that Plaintiff is the owner of copyrights for the Dubai Frame and the technical drawings for the Dubai Frame, that Defendants have infringed Plaintff's copyrights for the Dubai Frame and the technical drawings for the Dubai Frame, and that Defendants are enjoined from profiting from their infringement without compensation to Plaintiff;

(B)     Past and future damages for all gains, profits, revenue, or advantages derived by the Dubai Municipality and ThyssenKrupp from their infringements of Plaintiff's valid copyrighted works;

(C)     Past and future damages for all gains, profits, revenue, or advantages incurred unjustly by the Dubai Municipality and ThyssenKrupp from their their wrongful acts and infringements of Plaintiff's copyrights;

(D)      Lost past and future damages for all gains, profits, revenue, or advantages suffered by Donis as a result of the wrongful and infringing acts by the Dubai Municipality and ThyssenKrupp;

(E)     Enhanced damages wherever applicable for Defendants' willful and intentional violations of Plaintiff's copyrights;

(F)     Statutory damages;

(G)     Costs and attorneys' fees;

(H)     Any further relief as the Court deems just and proper.

Dated:      December 22, 2016

Respectfully submitted,

IFRAH LAW PLLC

By: _____
     David S. Yellin (DC Bar # 1028475)
     dyellin@ifrahlaw.com
     A. Jeff Ifrah (DC Bar # 456661)
     jeff@ifrahlaw.com

1717 Pennsylvania Avenue, NW
Suite 650
Washington, D.C. 20006
(202) 524-4140

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
     Andrew G. Celli
     acelli@ecbalaw.com
     Alanna Small
     asmall@ecbalaw.com

     (*pro hac vice* forthcoming)

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

KLARIS LAW PLLC

By: _____
     Edward Klaris
     edward.klaris@klarislaw.com

     (*pro hac vice* forthcoming)

475 Park Avenue South, 22nd Floor
New York, New York 10016
(917) 822-7468

*Attorneys for Plaintiff Fernando Donis*